UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 04-144-DLB

AHMED MOHAMED                                                                                    PLAINTIFF

vs.                                              **OPINION & ORDER**

AIR SERV CORP.                                                                                   DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This is a Title VII employment discrimination case. Plaintiff, a Mauritanian Muslim, claims that Defendant failed to hire him for a cabin security position based upon his national origin (Arab) and religion. He filed the instant suit *pro se*, seeking compensatory damages, injunctive relief, fees, and punitive damages, however, he has since retained counsel.

This matter is presently before the Court upon Defendant's Motion for Summary Judgment. (Doc. #17). Plaintiff filed a response (Doc. #25), to which Defendant replied (Doc. #26). The motion is now ripe for review.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff came to the United States from his native Mauritania in 2000. Mauritania is an Islamic republic located on Africa's west coast. Prior to emigrating to the U.S., Plaintiff studied in Libya and received a degree in veterinary medicine, however, he is not currently licensed to practice in this country. Plaintiff, who currently resides in Erlanger, Kentucky, began working at Bluegrass Quality Meats in August 2001 as a QS/lab technician. He was employed on a full-time basis. Plaintiff also took courses at two local universities - the University of Cincinnati and Northern Kentucky University. In addition,

1

Plaintiff worked a part-time job at the Greater Cincinnati/Northern Kentucky International Airport ("Airport").[1]  Plaintiff was discharged from his security guard position for Allied Security in June or July 2003.  He subsequently filed a complaint with the Equal Employment Opportunity Commission (EEOC), charging Allied with religious and ethnic discrimination.  That case ultimately settled for an undisclosed amount.

In the fall of 2003, Defendant contracted with Delta Airlines to provide certain services for its aircraft at the Airport.  Those services were of two general varieties - maintenance/cleaning and security.  "Cabin services" employees were responsible for cleaning and servicing the cabins of the aircraft while they were grounded; and "cabin security" employees were responsible for screening vendors - via a handwand - before they were permitted to board the aircraft.

After he was terminated from Allied Security, Plaintiff applied for a cabin security position with Defendant on October 8, 2003. His application for employment reflects that he was interested in working twenty hours per week, mostly on weekends.  Specifically, Plaintiff indicated that he was unable to work between 2:00-11:00 p.m. on weekdays. Plaintiff's availability was limited due to his job at Bluegrass and classes, which he attended four days per week.  Plaintiff alleges that the cabin security position was advertised as available on a full or part-time basis, and this was confirmed by one of Defendant's employees at the time he applied.  Defendant claims that the only part-time cabin security shift was from 5:00-9:30 p.m., which directly conflicted with Plaintiff's availability.

---

[1] At his deposition, Plaintiff testified that he worked for five different employers at the Airport - Argenbright, Huntleigh USA, Airport Terminal Service, DHL, and Allied Security.  Plaintiff held positions as a mail sort agent, screener, and security guard.

2

After completing his application, Plaintiff underwent drug screening and Airport identification training, which he considered conditions of his employment with Defendant. The record, however, is unclear with respect to many of the details of Plaintiff's alleged employment - when he was formally hired and fired, what position he was hired for, compensation, hours, etc. Defendant maintains that Plaintiff was offered and accepted a cabin services position. Plaintiff claims that he declined Defendant's offer because he was interested in a cabin security position, which would not be available until November 5th. Nevertheless, on October 24, 2003, Plaintiff began training, which consisted of two days of classroom instruction and two nights of on-the-job training.[2] It is undisputed that, although Plaintiff attended the first day of training, he did not complete the balance of the training.[3] It is also undisputed that Plaintiff never worked for Defendant after that in any capacity. In his answers to Defendant's interrogatories, however, Plaintiff indicated that he still considered himself employed by Air Serv as late as March 2004.

Plaintiff filed an EEOC charge against Defendant on December 8, 2003. Plaintiff alleged that Defendant discriminated against him based upon his national origin by not offering him the cabin security job he requested. Specifically, Plaintiff claimed:

> On or about October 3, 2003, several other applicants and I applied for a position with Airserve [sic] as a Security Guard. Between October 3 and November 2, 2003, I was repeatedly told that I would be referred to work soon. On November 2, 2003, I learned that I was the only person who applied on October 3, 2003, who had not been hired, although I had more

---

[2]Plaintiff claims that Defendant "put him into training as a Cabin Security person." (Plf's response, p. 7). Defendant claims that the training was for cabin services.

[3]According to Plaintiff, when he learned that the cabin services position required him to handle receptacles containing alcoholic beverages, he informed Defendant that he could not do so because of his religious beliefs.

3

> experience as a Security Guard than the majority of the other applicants. I [Plaintiff] believe that I have been discriminated against due to my national origin, Arab, in violation of Title VII of the Civil Rights Act of 1964, as amended.

After receiving a "right-to-sue" letter on April 14, 2004, Plaintiff filed a complaint *pro se* in this Court alleging Title VII violations based upon national origin and religion. Defendant has moved for summary judgment.

## II.  ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

**B.     Scope of EEOC Charge**

Prior to considering the merits of Plaintiff's case, the Court must make a threshold determination. That is, whether the Court has jurisdiction over all of Plaintiff's Title VII claims. In its motion, Defendant claims that "Plaintiff made no claim of religious discrimination to the EEOC ...," therefore, any current claim of such discrimination should be dismissed. Perhaps recognizing the futility of the claim, Plaintiff failed to offer any response.

The Sixth Circuit has repeatedly addressed the permissible scope of a Title VII complaint *vis-à-vis* an EEOC complaint. *See Leigh v. Bureau of State Lottery*, No. 88-1802, 1989 WL 62509, at *1 (6th Cir. June 13, 1989) (Table decision, text available in Westlaw). In *Leigh*, the plaintiff filed a complaint with the EEOC alleging race discrimination only. *Id*. Her federal complaint, however, included allegations of sex-based discrimination as well. *Id*. The district court granted summary judgment for the defendant-employer, and held that the plaintiff's allegations of sex-based discrimination constituted an impermissible enlargement of the EEOC complaint. *Id*. at *2.

The Sixth Circuit agreed, stating: "[t]he rule in this circuit is that the complaint and the judicial proceedings [in Title VII cases] are limited not to the words of the EEOC charge but to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1105 (6th Cir. 1981). Claims that are not within the scope of the EEOC investigation must be dismissed for lack of subject matter jurisdiction. *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir. 1977), *cert. den.*, 435 U.S. 915 (1978). The court noted that several policy considerations support

the rule that a Title VII discrimination complaint is limited to the reasonable scope of the EEOC investigation:

> First, courts should not restrict subsequent Title VII complaints based on procedural technicalities or the failure of EEOC charges to contain the exact wording necessary because these charges are usually filed by lay complainants unfamiliar with the niceties of pleading. *EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 446 (6th Cir. 1977). Second, the statutory scheme of Title VII indicates that Congress intended the EEOC to investigate fully allegations of discrimination before such allegations become the basis of a Title VII suit. *Id.* at 447 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Third, Congress "intended that conciliation be the preferred method for eradicating employment discrimination ...," and focused conciliation efforts can occur only if the EEOC is aware of the specific discriminatory employment practice. *Id.* at 449. Fourth, concerns of due process require that employers receive timely notice and opportunity to comment before institution of a suit. *Id.* at 450.

*Leigh*, 1989 WL 62509 at *2.

Plaintiff's EEOC charge alleged discrimination based upon national origin only. In fact, when asked on what basis he was discriminated against, Plaintiff checked the box marked "national origin." In addition, Plaintiff's own narrative states that he believed he had been discriminated against "due to his national origin." Accordingly, the Court concludes that Plaintiff's complaint, which includes allegations of discrimination based upon his religion, impermissibly expands the EEOC charge. Therefore, the Court lacks subject matter jurisdiction and Defendant is entitled to summary judgment on that claim.

**C.     Plaintiff's Claim of National Origin Discrimination**

6

In deciding a claim of discrimination based upon national origin under Title VII[4] where direct evidence is lacking, the Court must follow the familiar three-part burden shifting test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that test, the plaintiff carries the initial burden of establishing a prima facie case of unlawful discrimination. *Id.* at 802. This may be done by showing that:1) the plaintiff belongs to a protected category; 2) he applied and was qualified for a job for which the employer was seeking applicants; 3) despite his qualifications, he was rejected; and 4) after his rejection, the position remained open and the employer continued to seek applicants from persons of his qualifications. *Id*. The establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

Once the plaintiff establishes a prima facie case, the defendant must articulate some "legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. If the defendant states a legitimate, non-discriminatory reason for the adverse employment action, the employer satisfies its burden of production and the presumption of discrimination disappears. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502,

---

[4]Title VII of the Civil Rights Act of 1964 provides, in pertinent part:

(a) Employer practices

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e-2.

507-08 (1993). Plaintiff must then prove that Defendant's proffered reasons are not the "true reasons" for its decision, but instead are merely a pretext for unlawful discrimination. *Fuentes*, 32 F.3d at 764. To do so, Plaintiff must produce evidence, "direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." *Fuentes*, 32 F.3d at 764. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

As an initial matter, neither party addressed Plaintiff's membership in a protected class. However, the Court concludes that Plaintiff, who is Arabic, satisfies the first *McDonnell Douglas* prong. With respect to the second prong, Defendant argues that Plaintiff was not qualified for the cabin security position because he "sought part-time, weekend-only employment ... which was incompatible with the available ... shifts." (Def's MSJ, p. 6). In addition, Defendant claims that "the only part-time Cabin Security work shift, weekdays from 5:00 p.m. to 9:30 p.m., directly conflicted with Plaintiff's availability." (*Id*.). In response, Plaintiff alleges that he was never informed that his limited availability "was a bar to his employment."

The Sixth Circuit explained what is required for a plaintiff to satisfy the qualification prong of the prima facie test in *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003). Although *Wexler* was an ADEA case, the same burden-shifting framework and evidentiary burden applies. The Sixth Circuit stated that a plaintiff can prove that he is qualified for a position by presenting credible evidence that his qualifications are at least

8

equivalent to the minimum objective criteria required for employment in the relevant field. *Id*. at 576. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills. *Id.*

Defendant maintains that Plaintiff's work availability was an objective criterion that disqualified him from the cabin security position. In response, Plaintiff has failed to produce any evidence reflecting his education, experience, and/or skills, except to state generally that he was qualified for the position (presumably, based upon his prior experience as a security guard for Allied Security). Instead, he claims that he was never informed he was unqualified. In fact, Plaintiff testified that he was repeatedly told his schedule would be accommodated and he would be assigned cabin security shifts.

Based upon the record before it, the Court concludes that Plaintiff has failed to satisfy the second *McDonnell Douglas* prong. Because the cabin security position he applied for was only available at times Plaintiff himself was unable to work, and Plaintiff did not complete the required training for job, he has failed to show he was qualified for the position. For the sake of completeness, however, the Court will analyze the remaining elements of Plaintiff's prima facie case.

The third element of a failure to hire case requires Plaintiff to prove that, despite his qualifications, he was rejected (i.e., denied the position). Although this element is generally straightforward, the record in this case is replete with inconsistencies, which the Court is compelled to address. As noted above, Plaintiff claims that after he applied for the position, he began cabin *security* training. Defendant, however, claims that Plaintiff began, but did not complete, cabin *services* training. According to Plaintiff, regardless of the position for

9

which an applicant was hired, the training was the same. Whether Plaintiff was hired for cabin security or services, it is undisputed that he never performed any work for Defendant. Therefore, viewing the facts in a light most favorable to Plaintiff, the Court concludes that this element is satisfied.

The final element of Plaintiff's prima facie case requires him to prove that the cabin security position remained vacant and Defendant continued to seek applicants who were similarly qualified. This fourth prong goes to the very heart of any claim of discrimination by requiring Plaintiff to prove that he was treated differently than an applicant who had the same qualifications, but was not a member of the protected class. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166 (6th Cir. 2003). Much like the other elements, Plaintiff's proof on this prong is convoluted to say the least. In fact, Plaintiff failed to even address this element in his response to Defendant's motion.

According to Plaintiff, he attended cabin security training with two other individuals - known only as Tim and Sparky - both of whom were Caucasian males. In his complaint filed with the EEOC, Plaintiff stated that he believed that both men were hired by Defendant as security agents immediately after they completed training. When asked about Tim and Sparky at his deposition, Plaintiff testified: "I know there have [sic] to be somebody who filled the job. I know that [the] job was available, and I'm just assuming that since the company needed somebody to do it, they have [sic] to hire somebody." (Tr. 178). Allegations of employment discrimination cannot be based upon such assumptions. Plaintiff has not offered any evidence of his own qualifications for the employment he sought, nor has he proved that an "unprotected" applicant with similar qualifications was ultimately hired (indeed, he cannot even say with certainty that any applicant was hired).

10

Moreover, even if the Court were to assume that Plaintiff, Tim, and Sparky were similarly situated in all other respects, Tim and Sparky completed the training that Plaintiff abandoned.

While the Court has, consistent with its duty, construed the facts in a light most favorable to Plaintiff, it cannot ignore the gaping holes that pervade his case. Upon review of all the evidence of record - including Plaintiff's deposition and EEOC charge - the Court concludes that Plaintiff has failed to come forward with any evidence that he was qualified for the position he sought, or that an equally qualified non-Arab applicant was ultimately hired for a cabin security position. Having failed to satisfy the second and fourth prongs of *McDonnell Douglas*, Plaintiff has not established a prima facie case of discrimination based upon his national origin, and Defendant is entitled to summary judgment.[5]

### III. CONCLUSION

In accordance with the above,

**IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. #17) be, and hereby is, **GRANTED**;

(2) Plaintiff's complaint be, and hereby is, **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of this Court; and

(3) The Final Pretrial Conference date of September 13, 2005 and the Trial date of October 17, 2005 are **VACATED**.

---

[5] Because Plaintiff has failed to establish a prima facie case of discrimination, the Court need not address the legitimacy of Defendant's reasons for its employment decision. For the same reason, the Court need not determine whether the proffered reasons were pretextual.

    (4)    A Judgment in favor of Defendant will be entered concurrently herewith.

This 1st h day of August, 2005.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\Opinions\2-04-144-OpinionOrder.wpd